UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
APR 12 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-298-GWU

KELLY CREGER, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Kelly Creger, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of left arm pain, obesity, a personality disorder, and borderline intellectual functioning. (Tr. 17). Nevertheless, based in part on the testimony of the vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 20-24). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's younger age, limited education, and past relevant work could perform any jobs assuming that she had no exertional limitations, but did have the following non-exertional impairments. (Tr. 341-2). She: (1) would be limited to occasional use of her left hand; (2) would need a job that accommodated borderline intellectual functioning; (3) would have a "seriously limited but not precluded" ability to function

independently, and a "limited but satisfactory" ability to follow work rules, relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, maintain attention and concentration, handle detailed instructions, behave in an emotionally stable manner, relate predictably in social situations, demonstrate reliability, and adapt to changes in the work setting; and (4) would be limited to work involving no more than simple, repetitive, non-detailed tasks where co-worker and public contact would be casual and infrequent, supervision and direction would be non-confrontational, and changes in the workplace would be infrequent and gradually introduced. (Id.). With these restrictions, the VE testified that the plaintiff could return to her past job as a production inspector. (Tr. 342). In the alternative, he named other jobs that the plaintiff would be able to perform at the light and sedentary levels, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 342-3).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleged disability due to being mildly mentally handicapped, and having difficulty using her left arm after the tendons had been cut in a motor vehicle accident. (Tr. 88). She testified to difficulty in getting along with other people, and stated that she had not been able to stay in any job longer than nine months. (Tr. 334, 336-7). She had been in special education during school, but failed several

grades, and was "terrible" at reading. (Tr. 337). However, she felt that she would be able to write a grocery list, and her math was "not bad." (Tr. 338). She did not feel that she could lift anything over 10 pounds with her left hand. (Tr. 339).

Almost the only evidence regarding the plaintiff's physical condition comes from a consultative examination by Dr. Wendy French in June, 2002. (Tr. 148). Dr. French noted that the plaintiff was obese, weighing 313 pounds at a height of 69.1 inches, and she had scars on her left elbow consistent with tendon surgery. (Tr. 149). However, she felt that lift grip testing was invalid due to poor effort, and noted the plaintiff had no difficulty in resisting and returning her arm back to a neutral position. (Tr. 149-50). A pulmonary function test showed mild to moderate obstructive disease, but the plaintiff smoked one pack of cigarettes per day. (Tr. 148,150). Dr. French concluded that she could not state that the plaintiff had restrictions that would limit her ability to carry objects, and there was no physical evidence for significant restriction. (Tr. 150). A state agency physician who reviewed a portion of the record agreed that the plaintiff did not have a "severe" physical impairment. (Tr. 166). At a subsequent psychiatric hospital admission, a physical examination also noted a decreased grip in the left hand (Tr. 213), and the ALJ included a restriction on the use of the left arm in his hypothetical question. Thus, the physical hypothetical factors appear to be supported by substantial evidence, and the plaintiff does not challenge them on appeal.

The plaintiff's sole argument on appeal is that she meets the Commissioner's Listing of Impairment 12.05C. She points out that uncontradicted psychological testing by Julie Joseph Fox, a psychologist, produced a verbal IQ score of 63, a performance IQ score of 72, and a full-scale IQ score of 64. (Tr. 160). The psychologist deemed the results to be accurate, and included "mild mental retardation" as one of her diagnostic impressions. (Tr. 159-60). However, a state agency reviewing physician noted that while the plaintiff's tested IQ was low, the evidence reflected a higher level of adaptive functioning. (Tr. 170).

Moreover, no diagnosis of mental retardation or even borderline intellectual functioning was included from treating sources. During the plaintiff's psychiatric hospitalization for six days in September, 2002, she was diagnosed with a bipolar affective disorder, intermittent explosive disorder, polysubstance abuse in remission, and a personality disorder. (Tr. 215). Nor did other psychological examiners that month suggest mild mental retardation (Tr. 235-8); indeed, neither developmental delay or disability was noted on one check sheet (Tr. 256) and average estimated intelligence was indicated on another (Tr. 259). The plaintiff's follow-up psychological treatment as outpatient was terminated due to noncompliance, with diagnoses of an intermittent explosive disorder, alcohol dependence, and a mood disorder and no reference to retardation. (Tr. 164-5, 252-86).

Dr. David Shraberg, a psychiatrist and neurologist, answered interrogatories from the ALJ on May 25, 2004, and concluded that the plaintiff essentially had a personality disorder that had a mixture of antisocial and avoidant features, but her maladaptive pattern was remedial, and he did not believe that her mental limitation, obesity, and personality dysfunction would equal a Listing, although he specifically mentioned LOI 12.02 and 12.08. The plaintiff argues, however, that Dr. Shraberg was not responsive to a specific question from the ALJ regarding LOI 12.05C. (Tr. 295).

LOI 12.05C is captioned "Mental retardation," and generally provides for a finding of disability if an individual can show "a valid verbal, performance, or full-scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." However, the Sixth Circuit has held that a claimant will not meet the Listing without satisfying the diagnostic description as well as its introductory paragraph. Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001). The introductory paragraph states that "mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning *initially manifested during the developmental period*; i.e., the evidence demonstrates or supports onset of the impairment before age 22."

In the present case, the plaintiff did not submit any school records or IQ testing prior to age 22. The evidence that is available could be interpreted by a reasonable fact finder as supporting a level of adaptive functioning above the level of mental retardation. She was apparently able to obtain a driver's license through an oral examination, according to her mother. (Tr. 115). Her work history shows that she was employed to some extent in various jobs prior to age 22. From 1995, when she was 18 and 19 years old, until 1998, when she turned 22, the plaintiff earned approximately $2,000 each year from various jobs. (Tr. 74-76).[1] As the ALJ noted, the plaintiff was capable of living alone with her small child and taking care of the household, including cleaning, cooking, getting recipes from cookbooks and magazines, and doing all her own grocery shopping, meal planning, and bill paying. (Tr. 21, 158).

Although Dr. Shraberg could have been more responsive to the ALJ's interrogatories, he did, as noted, indicate that the plaintiff did not meet a Listing, and the state agency psychologist who also directly reviewed the report from Julie Joseph Fox did specifically state that the plaintiff had a higher level of adaptive functioning than indicated by the IQ scores. Combining these factors with the lack of evidence prior to age 22, substantial evidence supports the ALJ's determination

---

[1]She had quit her most recent job at McDonald's, which had lasted nine months, because she argued with a manager, not because she was incapable of doing the work. (Tr. 333-4).

that LOI 12.05C was not met. The factors in the hypothetical question are also supported by substantial evidence, as they reflect Dr. Shraberg's residual functional capacity assessment (Tr. 301-2), and he had an opportunity to review all of the evidence.

The decision will be affirmed.

This the 12 day of April, 2006.

G. WIX UNTHANK
SENIOR JUDGE